IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff / Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 08-10141-01-WEB |
| | ) | 10-1118-WEB |
| THOMAS J. FERNANDEZ, | ) | |
| | ) | |
| Defendant / Petitioner. | ) | |

MEMORANDUM AND ORDER

This matter is before the court on the petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (Doc. 142). The parties have fully briefed the issues, and the motion is ripe for ruling.

I. History

Petitioner was charged in a second superceding indictment with conspiracy to distribute methamphetamine, cocaine and marijuana, in violation of 21 U.S.C. § 846; conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846; possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § § 841(a) and (b)(1)(D) and 2; possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a) and (b)(1)(A); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); conspiracy to commit money laundering, in violation of 18 U.S.C. § § 1956(h) and 2; promoting and concealing money laundering, in violation of 18 U.S.C. § § 1956(a)(1)(A)(I), 1961(1) and § 2; six counts of concealing money laundering, in violation of 18 U.S.C. § § 1956(a)(1) and 2; four counts of engaging in a monetary transaction using criminally

1

derived property, in violation of 18 U.S.C. § § 1957 and 2; and attempted bank fraud, in violation of 18 U.S.C. § 1344(2).

On January 23, 2009, the petitioner pled guilty to conspiracy to distribute cocaine, methamphetamine and marijuana, in violation of 21 U.S.C. § 846. The remaining counts of the indictment were dismissed. The petitioner's plea was a result of a Rule 11(c)(1)(C) plea, in which the parties proposed a sentence of 15 years (180 months) imprisonment, followed by three years supervised release. The court accepted the plea, and on April 9, 2009, sentenced the petitioner to 180 months imprisonment. Petitioner did not file a direct appeal.

II. Section 2255 and other Motions

Petitioner filed a motion to vacate pursuant to 28 U.S.C. § 2255, a supplement, and a reply to the Government's response. Two separate issues are identified.[1] First, petitioner argues that he received ineffective assistance of counsel. Petitioner includes numerous arguments in support of this position, including: (1) his attorney did not file a motion to suppress the wiretap evidence; (2) his attorney failed to do an investigation or share discovery; (3) his attorney did not file a direct appeal; (4) he was forced into the plea agreement; (5) his attorney did not put him in the best position after the plea, and he should have been advised to enter a plea without an agreement; (6) his attorney did not advise him of the sentencing possibilities; (7) and based on his attorney's conduct, his plea was not voluntary because he did not understand the terms in the agreement.

---

[1]The court notes petitioner makes numerous arguments in his lengthy filings. The court has identified the arguments which petitioner supports with facts or law. The remaining arguments are either lacking in sufficient factual support for the court to address, or are frivolous.

Petitioner also argues the plea agreement is void based on contract principles, as there was no consideration or no mutual assent, and the contract was based on fraud and unconscionability. Petitioner also argues that the plea agreement was breached, and therefore void, as his oral understanding of what properties were subject to foreclosure was not the same as the written plea agreement.

Petitioner also has moved for leave to proceed in forma pauperis. Petitioner argues that his only source of income is the money provided by his family and his prison job.

Petitioner filed a motion titled "Supplemental Motion Based on Continuous Breach by the Government." (Doc. 161). Petitioner argues the Government has not disposed of the properties on which it sought forfeiture. Therefore, his family remains responsible for the financial obligation of the property. Petitioner requests a hearing to determine the facts and relationship of the plea agreement as it pertains to the obligation of the Government to satisfy the loans upon forfeiture of said properties.

III. Discussion

a. Effect of Plea Agreement

"A waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001). Exceptions include "where the agreement was involuntary or unknowing, where the court relied on an impermissible factor such as race, or where the agreement is otherwise unlawful." Id. at 1182-83.

The Tenth Circuit has created a 3-prong standard to resolve appeals brought by

3

defendants who have waived their appellant rights in a plea agreement. The Court must determine: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights, and (3) whether enforcing the waiver would result in a miscarriage of justice." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004).

    1. Scope.

The Court will strictly construe appeal waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights. Hahn at 1325 (quoting United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003)). Defendant's plea agreement specifically includes a statement waiving the right to attack the conviction and sentence through collateral review on a § 2255 motion except to the extent that the court departs upwards from the applicable sentencing guideline range determined by the Court. The court did not depart upward; the instant motion is therefore within the scope of the waiver.

    2. Knowing and Voluntariness of Petitioner's Waiver.

The defendant must enter his plea knowingly and voluntarily for the waiver to be accepted. The court first examines whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. Hahn, 359 F.3d at 1325, citing United States v. Elliott, 264 F.3d 1171, 1174 (10th Cir. 2001). Second, the Court must have conducted an adequate Rule 11 plea colloquy. Hahn at 1325, citing Andis, 333 F.3d at 891. The petitioner bears the burden to show that he did not knowingly and voluntarily enter into the plea agreement. Id. at 1329; United States v. Edgar, 348 F.3d 867, 872-73 (10th Cir. 2003).

The record clearly shows the petitioner entered into the plea agreement fully aware of the

4

rights he was waiving, the consequences of the plea, and the possible sentence. The plea agreement contained the following language:

> "1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Superseding Indictment charging Conspiracy to Distribute Controlled Substances, to wit: cocaine, methamphetamine and marijuana, in violation of Title 21, United States Code, § 846 with reference to 841(a) and Title 18, United States Code, § 2. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Superseding Indictment to which the defendant has agreed to plead guilty is not more 20 years of imprisonment, a $1,000,,000 fine, at least 3 years of supervised release, and a $100 mandatory special assessment. The United States agrees to dismiss the remaining counts, the indictment and the second superseding indictment at the time of sentencing."

> "3. **Proposed (c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case, a sentence of 15 years in prison, followed by 3 years of supervised release for Count 1. The mandatory special assessment of $100 is to be paid during the defendant's incarceration. The parties seek this binding plea agreement as an appropriate disposition of the case because it brings certainty to the sentencing process and assures that the defendant and the government will benefit from the bargain they have struck if the Court permits itself to be bound by the proposed sentence; the interests of justice are served by the sentence, thereby assuring that the sentence is consistent with the sentencing factors of 18 U.S.C. § 3553(a); and if the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this plea agreement. This agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, public defender, probation office, U.S. Marshals Service and other law enforcement resources."

> 11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein (including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release). The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was

determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

The court questioned petitioner at the change of plea hearing to determine if he understood the charge against him, the arguments he was waiving, and if he was entering his plea freely and voluntarily. The petitioner's responses, given to the court under oath, show that he understood all of the these things. During the plea colloquy the court specifically asked petitioner if the factual basis for the plea of guilty was true and accurate, to which the petitioner replied it was. The court informed the petitioner that the maximum possible punishment for the offense was up to 20 years imprisonment, which petitioner understood. The court inquired if the petitioner understood that the parties agreed that an appropriate sentence in the case was a 15 year term of imprisonment, petitioner replied that he did. The court inquired of petitioner if he understood the forfeiture of the property, and that he was giving up any interest in the property. Petitioner replied that he understood. The court asked him whether he understood that the waiver of appeal means that petitioner was waiving his right to appeal the conviction and the sentence, in a direct appeal or in a collateral attack. The Defendant represented to the court under oath that he understood. His motion contains nothing to suggest that he did not in fact understand what he was giving up by pleading guilty.

The defendant's plea agreement stated that he knowingly and voluntarily waives his rights to appeal or collaterally attack any matter in connection with the prosecution, conviction,

and sentence. The fact that the agreement included this waiver was reviewed with him at the Rule 11 hearing. The language of the agreement states "the defendant acknowledges that he has read the plea agreement, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion." The last sentence of the plea agreement states, "[T]he defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily." This court finds that the petitioner read and signed the petition to plead guilty, read and signed the plea agreement, and discussed with the court the effects of the plea agreement. The defendant's plea was knowing and voluntary, and the waiver is therefore knowing and voluntary.

     3. Miscarriage of Justice

Enforcement of an appellate waiver does not result in a miscarriage of justice unless enforcement would result in one of four exceptions: (1) where the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful. Hahn, 359 F.3d at 1327. To satisfy the fourth factor, the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. Id.

Petitioner argues that his plea was not knowing and voluntary because his attorney was ineffective and he did not understand the effect of his plea agreement. Therefore, without a knowing and voluntary plea, the waiver is invalid. The court reviews petitioner ineffective assistance of counsel claim.

b. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a defendant must show his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of counsel's performance must be highly deferential......a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'." Strickland at 689, citing Michel v. Louisiana, 350 U.S. 91, 76 S.Ct.158, 100 L.Ed. 83 (1955). The defendant must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland at 694.

Petitioner argues his counsel was ineffective in a number of different aspects: (1) his attorney did not file a motion to suppress the wiretap evidence; (2) his attorney's failure to do an investigation or share discovery; (3) his attorney did not file a direct appeal; (4) he was forced into the plea agreement; (5) his attorney did not put him in the best position after the plea, and he should have been advised to enter a plea without an agreement; (6) his attorney did not advise him of the sentencing possibilities; (7) and based on his attorney's conduct, his plea was not voluntary because he did not understand the terms in the agreement.

As discussed above, the petitioner knowingly waived his right to appeal, and only claims that "challenge the validity of the plea or the waiver," Cockerham, 237 F.3d at 1187, survive the waiver. Petitioner alleged two claims based on the validity of the plea or the waiver; first, the claim that he was forced into the plea agreement, and second, his claim that his plea was not

8

voluntary because he did not understand the terms of the agreement. The remaining claims are barred as they do not related to the validity of the plea or the waiver.

Petitioner argues his plea was not voluntary as he did not understand the terms in the agreement. Petitioner's argument is not supported by the facts. As discussed previously, the court conducted a Rule 11 plea colloquy with the petitioner, in which every section of the plea agreement was reviewed. Petitioner represented to the court, at the hearing and in the petition and agreement, that he read and understood the agreement. Petitioner's bare assertion now, after buyer's remorse has set in, that he did not understand the terms of the agreement, is not supported by petitioner's statements in his petition, his plea agreement, or his oral statements to the court. Petitioner argues his counsel was ineffective in advising him regarding the plea and the waiver. However, petitioner does not set forth any facts to support the allegation. Petitioner discusses the ethical obligations of attorneys, but does not state how his attorney's conduct was unethical or how it relates to the voluntariness of his plea. Other arguments advanced by the petitioner do not lend any support to the allegation that his attorney was ineffective in connection with the negotiation of the waiver of the plea agreement.

Petitioner argues he was forced to take a plea. Petitioner makes this argument in the last sentence of the last paragraph of the section titled, "Did the Court Pursuant to the Plea Agreement, and Against Contract Law and Principals Abuse its Discretion When It Accepted the Contract Plea Void in Consideration?" Petitioner provides no factual support to this argument. In a separate filing, under a section regarding ineffective assistance of counsel, petitioner argues that the Government indicated that if he did not enter a plea, that charges would be filed against his wife and mother.

The Tenth Circuit has held that Government threats to prosecute third persons during plea negotiations are not necessarily unconstitutional. Mosier v. Murphy, 790 F.2d 62, 66 (10th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986). However, the use of such tools in reaching a plea agreement "can pose a danger of coercion." Id. "Plea bargains involving 'adverse or lenient treatment for some person *other* than the accused... might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider.'" United States v. Whalen, 976 F.2d 1346, 1348 (10th Cir. 1992), citing Bordenkircher v. Hayes, 434 U.S. 357, 364 n.8, 98 S.Ct. 663, 669 n. 8, 54 L.Ed.2d 604 (1978). In Whalen, the Tenth Circuit found that Whalen's allegation that he would not have pled guilty but for the government's threat to prosecute his wife, if true, would have made his plea involuntary, and therefore he was entitled to a hearing on the issue. Id. at 1348-49.

The Government is held to a "high standard of good faith" in its use of such tactics. United States v. Wright, 43 F.3d 491, 498 (10th Cir. 1994), quoting Mosier, 790 F.2d at 66. The Government's threat to prosecute a third person must be done in good faith; if so, then the plea, even if entered to obtain leniency for the third person, is not involuntary. Miles v. Dorsey, 61 F.3d 1459, 1468 (10th Cir. 1995). In Miles, the petitioner did not argue that the government lacked probable cause to charge his family, petitioner only alleged the plea was involuntary based on the government's threat. Id. at 1468. The Court found there was an indictment filed against petitioner's family, and the government was "merely threatening to follow through with what it was legally authorized to do." Id. at 1469.

The Government cites to United States v. Hilst, 297 Fed.Appx. 769 (10th Cir. 2008), in support of the position that once the court finds the defendant knowingly and voluntarily waived

his appeal and collateral attack rights, the burden is on the defendant to show the plea is not knowing and voluntary. In <u>Hilst</u>, the defendant represented to the court at the plea hearing that he had not been promised anything, and his plea was not a result of threats, duress, or coercion. <u>Id.</u> at 771-72. On appeal, Hilst argued his plea was not voluntary, as he was coerced into the guilty plea in exchange for dismissal of charges against his wife. The Court found that "nothing in the plea agreement or plea colloquy suggest that Dr. Hilst did not knowingly and voluntarily enter into the plea agreement. Indeed, no record evidence indicates that he pleaded guilty in exchange for the dropping of charges against his wife. And neither the plea agreement nor the plea colloquy even mentions Dr. Hilst's wife as a basis for the plea and neither suggests Dr. Hilst's health or age affected his ability to knowingly or voluntarily plead guilty." <u>Id.</u> at 772. The <u>Hilst</u> case is easily distinguishable, as Hilst's wife had been indicted, and the Government agreed to dismiss charges against her after Dr. Hilst entered his plea. In <u>Hilst</u>, the Government had already set forth probable cause to proceed against the defendant's wife, but in the Government's discretion, decided to dismiss charges.

In the case at hand, charges were not pending against petitioner's wife or mother at the time of petitioner's plea. Therefore, there is not an initial showing that the Government was acting in good faith, or following through with pending charges.

On January 13, 2009, ten days before petitioner entered his guilty plea, the Government filed a second superceding indictment. Count 6 contains the following information:

> "Beginning on or about sometime in May of 2003 through June 12, 2008, the exact dates being unknown to the grand jury, in the District of Kansas and elsewhere, defendant Thomas J. Fernandez, did knowingly and intentionally combine, conspire, confederate, and agree with unindicted co-conspirators, Maricruz Fernandez (wife) and Loretta Fernandez (mother), and with others, both known and unknown to the grand jury, commit offenses against the United States

11

in violation of Title 18, United States Code, § § 1956 and 1957.

The manner and means used to accomplish the objectives of the conspiracy included, amount others, the following:

The defendant **THOMAS J. FERNANDEZ a/k/a THOMAS FERNANDEZ a/k/a TOMMY FERNANDEZ** obtained the proceeds from the Distribution of, Possession with the Intent to Distribute and Conspiracy to Distribute Controlled Substances, as alleged in Counts 1 through 4 of the Second Superseding Indictment and did engage in numerous financial transaction, affecting interstate and foreign commerce, involving these proceeds including but not limited to, financial transactions for the purchase and maintenance of real estate and vehicles, as alleged and incorporated in Counts 7 through 18 below, in order to promote the carrying on of the specific unlawful activities.....

Specifically, the defendant...obtained income through the illegal distribution of controlled substances, then took the cash derived there-from and purchased real estate and vehicles in the following manner:

The defendant gave Loretta Fernandez, his mother, currency representing proceeds from his illegal drug distribution and caused her to deposit these funds to her bank accounts. These funds were then withdrawn to purchase real estate, in the name of Loretta Fernandez, for the benefit of Thomas Fernandez.

The defendant utilized proceeds from his illegal distribution of controlled substances to purchase real estate and vehicles and caused these assets to be titled in the name of Loretta Fernandez, although the defendant continued to exercise control over these assets and utilized them for his own benefit.

The defendant utilized proceeds from his illegal distribution of controlled substances to purchase real estate and vehicles in his own name, and the name of Maricruz Fernandez, his wife, while making false statements to various lenders as to the true source of the funds used to make these purchases.

The defendant utilized proceed from his illegal distribution of controlled substances to make repairs, improvement and renovations to these real estate properties and converted many of them into rental properties. The defendant then used the profits from these rental properties to purchase additional real estate properties and to make some of the associated mortgage payments.

The defendant utilized cash proceeds from his illegal distribution of controlled substances to purchase money orders a grocery and convenience stores in the Wichita, KS area and used, or caused Maricruz Fernandez to use, these money orders to make mortgage and installment loan payments on his real estate and automobile loans."

The Tenth Circuit has determined that for prosecutors to act in good faith, they must have probable cause to indict the third person at the time the offer of lenity or the threat to prosecute is communicated. Wright, 43 F.3d at 499. "The government must have probable cause that those

third persons committed the crime that the government threatens to charge." Id. Considering the information set out in the Second Superseding Indictment, the reference to petitioner's mother and wife, and the statements that directly link them to the petitioner and his criminal activity, the Government had probable cause to proceed against petitioner's family members at the time the threat to prosecute was communicated. Therefore, the Government acted in good faith. Additionally, petitioner stated to the court, in the plea agreement and in the plea colloquy, that he was entering his plea of guilty freely and voluntarily, not due to any force, threats, or coercion. A petitioner who swears on the voluntariness of his plea carries a heavy burden in subsequently claiming that his plea was involuntary. Whalen, 976 F.2d at 1348. The petitioner has not overcome the burden in this case.

Petitioner also argues his counsel was ineffective in failing to file a direct appeal. The court notes that if petitioner requested his attorney to file a notice of appeal, and his attorney failed to do so, it would be a per se Strickland violation. United States v. Snitz, 342 F.3d 1154, 1155-56 (10th Cir. 2003). In Snitz, the Court found that "a lawyer who disregards specific instruction to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial." Id. at 1155-56.

In United States v. Garrett, 402 F.3d 1262 (10th Cir. 2005), the Tenth Circuit discussed the responsibility of counsel to file an appeal when the defendant waived the right to appeal and collaterally attack the sentence and conviction. Garrett argued that he asked his counsel to file a notice of appeal. His attorney testified that Garrett did not ask for an appeal. The Court found that a criminal defendant is entitled to a delayed appeal if he can establish that he asked his attorney to file an appeal and the attorney ignored the request, even if the defendant accepted a

plea agreement waiving appeal of his conviction and sentence. Id. at 1265, 1266. The Court reviewed a Supreme Court case which held that when a defendant asks his attorney to file an appeal and the attorney fails to follow the instruction, the attorney acts in a manner that is professionally unreasonable. Id. at 1265, citing Roe v. Flores-Ortega, 528 U.S. 470, 477-78, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

More recently, in United States v. Harrison, 2010 WL 1225617 (10th Cir. March 31, 2010), the Tenth Circuit affirmed the dismissal of a section 2255 petition, agreeing with the district court that a petitioner must provide some credible testimony that he requested his attorney to file an appeal, and his attorney ignored it. The Court relied on Machibroda v. United States, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), in which the Supreme Court found that it did not seek "to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of § 2255 does not strip the district courts of all discretion to exercise their common sense." Id. at 2. Finally, the Court in Harrison found that a habeas petitioner is not "automatically entitled to an evidentiary hearing merely because he makes a bald allegation that his attorney refused to file an appeal."

Petitioner has failed to assert more than a bare claim that he asked his attorney to appeal. Petitioner must allege credible testimony and specific facts to support his claim. Petitioner has not done so here. Petitioner's claims that his attorney was ineffective is not supported by specific allegations, and the claim is denied. Petitioner has not shown a miscarriage of justice, and has not presented any facts to show that any of the four situations discussed in Hahn apply.

14

Petitioner's claims based on ineffective assistance of counsel are denied, and his remaining claims are barred pursuant to the waiver.

c. In Forma Pauperis

Petitioner requests permission to proceed in forma pauperis. However, there is no filing fee for the filing of a motion pursuant to 28 U.S.C. § 2255. Although the court opens a civil case, the filings and motions are made in the criminal case. Petitioner's motion to proceed IFP is denied as moot.

d. Forfeiture

Petitioner waived the right to challenge the forfeiture of the property in his plea agreement. Petitioner argues that the government's refusal to dispose of the property creates a financial responsibility for his family. The plea agreement contained a list of real property, vehicles, and personal property which the parties agreed would be forfeited. The plea agreement contained the following paragraph:

> "**5. Additional Agreements.** C. Forfeiture. Defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of the assets identified in Exhibit A, in any proceeding, including any civil in rem proceeding or any administrative proceeding subject to the exception identified at the end of this subsection. The defendant acknowledges and agrees that the forfeiture of the real and personal property described herein shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture. Defendant agrees to the immediate entry of the preliminary order of forfeiture. Defendant agrees to sign any and all documents necessary to effectuate the forfeiture and transfer of his interest and possession in the property identified herein to the United States. Defendant freely, voluntarily, knowingly and intelligently waives any right to collaterally attack any matter in connection with this prosecution and sentence, including the forfeiture of assets.
> Notwithstanding the defendant's agreement to forego all interest in al assets which have been currently been identified in either the Superseding Indictment, *United States v. Contents of Boeing Credit Union account # 1277274, et al., Case No. 08-1176-JTM*, or any DEA administrative notice filed on or

15

> before January 1, 2009, the government agrees to release the properties titled in the name of Loretta Fernandez and located at 2435 S. Dalton, Wichita, Kansas and 2410 S. Laurel Street, Wichita, Kansas to Loretta Fernandez, the defendant's mother. In addition, following appraisals, the government will release two or more properties which may be titled in the name of the defendant's wife, Maricruz Fernandez and / or the defendant's mother and / or the defendant to the person or persons in which the property is titled. The particular properties to be released will be at the sole discretion of the government."

The plea agreement also contained Exhibit A, which listed real and personal properties subject to forfeiture. Listed are 24 properties, including the legal description. Also listed is approximately $235,861.30 in currency, three vehicles, and personal property, including a television, trailers, tools, equipment, and firearms. The court has determined the plea agreement was valid, and petitioner knowingly and voluntarily waived his right to appeal or collaterally attack the sentence, including the forfeiture. Petitioner has waived his right to attack the forfeiture proceeding. Petitioner's claim is denied.

IV. Conclusion

IT IS ORDERED FOR THE REASONS SET FORTH ABOVE that the petitioner's motion for relief under the provision of 28 U.S.C. § 2255 (Doc. 142) be DENIED.

IT IS FURTHER ORDERED that petitioner's Motion for Leave to Proceed in forma pauperis (Doc. 146) be DENIED as moot.

IT IS FURTHER ORDERED that petitioner's request for a hearing be DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability under the provisions of 28 U.S.C. § 2253 be DENIED.

IT IS SO ORDERED this 21 day of April, 2011, at Wichita, Kansas.

s/ Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge